Judge Ouenshaw
delivered the opinion of the Court.
William Webb, dec’d., by his last will and testament, among other devises, devised to his son William S. Webb, a moiety of the tract of land on which he resided, subject to the use and enjoyment of his wife during her life, or widowhood. Another tract of land, called his Bladesville tract, he devised to his son, Richard M. Webb. But, as his son, William S., could not enjoy the land devised to him, until the marriage or death of his wife, he, “therefore, (to use the language of the will,) reserved to his said son, William S., one half of. the rent or profits of the Bladesville tract, devised to Richard, until his son, William S., could get possession of the land devised to him.”
In the construction of wills the intention of the testator is,if pos sible, to be ascertained.
“As the tract of land I propose to give to my son, Wm, S. Webb, I have lent to his mother during her widowhood, I therefore reserve to my son William one half of the rent or profits of the said tract hereby given to my soil Kichard, until my son William can get possession of the land I have lent his mother.” W. S. Webb having died during the wido’hood of his mother without issue: Held that hisinterestinthe rent ceased at his death.
*47 William S. Webb died intestate, under the age o'f twenty-one years, without wife or children. And this suit was brought for a settlement and distribution of his estate.
An amended answer was-filed by Richard M. Webb, submitting to the Court the question — whether the charge upon the Bladesville tract of land determined at the death of William S. Webb — whether the uncollected rents, which, at that time, had accrued, were collectable, and what proportion of them, if any, his mother was entitled to receive.
It appears to have been agreed between the parties that these questions should at once be decided by the Court upon said amended answer, as preliminary to a final determination of the suit.
The Circuit Court decided that the said interest of William S. Webb in the rents of the Bladesville tract, ceased at his death, and no interest therein survived to his heirs.
This opinion of the Circuit Court does not, m terms, decide whether the rents which had accrued, and were not collected at the death of William S., could be collected or not; nor, whether his mother is entitled to any portion of them or not. Yet, in the assignment of errors, it is alleged that the Court erred in this respect, as well as in deciding that the interest of William ceased at his death. We, of course, cannot look beyond the question actually decided by the Court below. But, when we have examined and decided that question, no difficulty can, we presume, remain as to the other points.
In construing wills, the intention of the testator, if possible, is to be arrived at. -What, then, was his intention in creating a charge upon the Bladesville tract of land in favor of his son William S? We think this question not difficult of solution, when we enquire into his reason for it, assigned by himself, in his will. He says: “As the tract of land I propose to give to my son, William S. Webb, I have lent to his mother during *48 her widowhood, I, therefore, (for this reason,) reserve to my said son, William, one half of the rent or profits of this said tract hereby given to my son, Richard, until my son, William, can get possession of the land I have lent his mother.” Upon the death or marriage' of his mother—events which might happen at any time, that— moment, William is to be let into the enjoyment of his land, and the charge upon;, Richard’s is to cease. No provision is made by the testator in view of these contingencies, which he knew' might occur at any hour, for the continuance of this charge one moment beyond the death or marriage of his widow. The charge is placed upon the land of Richard, not because he had given Richard too much, but, because William could no.t get the immediate use of the land devised to him. It was for the latter reason only, as the testator explicitly declares. It may be true that the testator thought that the devise to Richard was better able to bear this charge than that to any of his other children, but we cannot believe that it would accord with his intention to continue a charge, onerous and inconvenient from its very nature, upon the land of Richai’d for the benefit of his other children, already well provided for, one moment after the death of William. This charge is imposed, until my son, William, can get possession of the land 1 have lent his Mother.'’ It may continue until the marriage or death of the mother, it is true, but the reason in the mind of the testator for its continuance - till such period having ceased by the death of William, the ■charge itself ought to cease. We believe this charge was designed to be personal to William, or, to William and his descendants, (for there w.ould be the same reason for giving it to them as to him,) and, if so, he having •died without issue, it ought to cease and determine at •his death.
The decree of the Circuit Court upon this question, submitted by the amended answer of Richard, and the agreement of the parties, being in conformity to our own views, ought to be affirmed.
Huston and Robertson for .plaintiffs; Hanson for defendants.
It appearing to have been the opinion of the counsel, that the question made in regard to the uncollected, rents, and the right of the widow to share in their distribution, had been decided by the Court below, 'we do not deem it amiss to remark merely, that we regard the entire rents which had accrued at the death of William, whether collected or uncollected, as personal assets, subject to distribution, and that his mother, of ■course, is one of the distributees, but as to them the Court below has rendered no decree.
Wherefore the decree that the charge upon the land of Richard ceased at the death of William is affirmed.